Coucqck, J.
In this case I shall not pursue the order of the brief, for the whole case turns on the construction of the will 5 and the first question which arises in the ■construction of the will, is, whether the four first senten•ces are to be considered as one clause, or to be taken as separate and independent clauses. The words are, “ I bequeath unto my loving wife, Margaret Geiger, one negro hoy named Joe, one negro wench named Lucy. Item. I bequeath unto my wife, one sorrel mare named Lady, with her saddle and bridle. Item. One brown cow aud one black heifer. Item. All my household furniture and the increase of the said negroes during her natural, &c.” The word life is clearly omitted in the last part of the clause. If the whole be taken as one clause, then it is clear that the limitation applies to the negroes. If not, it is contended that it applies only to- the furniture, and the increase of the negroes which are mentioned in the last sentence. On this part of the case, I entertain no doubt but that all the sentences are to be taken together- and constitute one clause, and that it was the intention of the testator, and that he has effected that intention by giving to his wife a life estate and no more. In short, that the words of limitation will apply to all the property contained in the several sentences, and be operative as *420 far its tbc nature of the properly given will permit It; as it is contended by the counsel for the defendant, the testator intended by the first sentence, to give the ne-groes, absolutely, where was the necessity of saying any thing about the increase ? for that would have passed of course with the negroes, and she would have had them during her natural life, and afterwards too, — that is, a right to dispose of them. We decided a case not long since, which was in this particular, exactly like the case before us, in which we determined that sentences thus connected, were to be taken together as constituting one clause.
The next question is not so free from doubt, though on an attentive examination of the cases, I think the principle clearly laid down in all of them, is, that although the word remainder may be in itself sufficiently comprehensive to embrace any reversionary interest, yr t we are to consult the whole will, and ascertain if such was the intention of the testator. If, by giving it such a construction as to pass all or any particular reversionary interest there will be a clashing of interests among the devisees or legatees, that in such ease it is clear that the testator did not intend it so to operate; or if from the words following, its general and comprehensive meaning and operation is restricted, that then it must be so confined in its operation.— Now the words here used are, “ and my four other ne-groes (by name) with all the remainder of my personal estate, shall be kept together for the use and maintaining of my children, till one of them arrives to age, or is married, and then to be equally divided.” It is clear, from these provisions, that the testator meant the remainder of the property which he had in possession, and not any future contingent interest; and it would be straining the Construction to extend it to the reversionary interest which would be left after the death of the wife. Again, *421 although lie could not tell with certainty that his wife would live till his eldest child came of age, yet he must have known that such an event might occur, w. it did, and he could not have intended that the division of that interest should take place in the lile time of his wife; for that would have terminated her interest, if i> could have been done. He could not have contemplated the division of an interest which might not, and did not, sail in before the time of disti ibution. It is presumable he did not think it necessary to provide for it at all, as it would by the law go to his children at the death of his wife.
The case which bear 3 the strongest analogy to the one before us in principle, is that of Goodwright, ex dem. of the Earl of Buckinghamshire vs. the Marquis of Devon-shire and wife. With the exception as to the generality of the language used after the word residue, “whatsoever and wheresoever,” the principles applicable to the case before us, are more fully discussed and the eases reviewed, than in any other to which we have been referred; it is, therefore, the only one to which I shall directly refer for support of the positions I have laid down, though in that ease the interest did not pass.
In the argument of the defendant’s counsel, commenting on the case of Freeman vs. Duke of C handos, he says, “the words in the first limitation to Ids wife are sufficient to include the reversion, provided an intention to pass it be manifest, yet those words seem rather to describe estates in possession and Lord Alvardey, in deliver-in the opinion of the Court, says, “ it way admitted that it was necessary to shew that it would be inconsistent with the general intent,of the testator, and the particular provisions of the will to impute to the testator any intention to convey (the property in dispute) his mind need not have been active if be did not know he had it. Still it would pass, provided he did-not mean to exclude *422 it.” In the first part of this quotation, the principle applicable to this case is expressly recognized, though the latter part of the sentence, 1 confess is somewhat unintelligible tome. For if he did not know that he had the interest, I am at a loss to conceive how he could be supposed to have had any intention about it either one way or the other.
In commenting on the case of Strong & Treat, he observes that Lord Mansfield said in that case, (which was afterwards confirmed in the House of Lords,) the generality of the expression, “ and also all other, the lands, tenements and hereditaments, in the said counties, whereof I am seized in fee, &c.” if unrestrained and'unqualified by any other words, would carry all the testator’s estate in possession, reversion, or remainder. But these genera] words may, by other words and expx-ess-ions in the will, be restrained to any of them, and it is the same thing, whether it be directly expressed, or clearly and plainly to be collected from the will, and he then concludes. “Here are plain expressions which are fully sufficient to shew that the testator did not intend to devise the reversion of the settled estate.” And Lord Alvanley then concludes Ms opinion by saying, the question then is, whether it appears from any particular clause of the will, or from the general intent of the testator manifested in the will, that it.would be inconsistent with the other part of the will to permit the residuary clause to take effect ? And I am decidedly of opinion, that in this case there is such a restriction upon the word in the particular clause, and such inconsisteneyin the other provisions of the will, as wholly to exclude all intention on the the part of the testator, and to prevent the general operation of the word remainder to pass the revisionary interest. This view of the subject renders it unnecessary to fake notice of the other grounds relied on, for it was con *423 ceded by the defendant’s counsel, (and very properly conceded,) that if the testator had not disposed of this reversionary interest, but died intestate as to it, that the action could not be maintained except by the executor, if he be alive, or by an administrator duly appointed. The motion for a nonsuit is therefore granted.

Nonsuit granted.

The statute of limitations will not commence to run before administration taken out.
This case now came up to this Court again on the part of the administrator of Harman Geiger. Harman Geiger died about the year 1778, or 1779. i’wo executors were named to his will, both oí whom died many years ago.— It did not appear that the surviving executor left an executor. The tenant for life, the widow, died on the 17th August, 1822, and the preceding suit on the part of the surving son and daughter of the testator having failed, Randolph Geiger, tlie son, took out administration on his father’s estate on the 1st July, 1827, and on the 17th Sept. 1827, commenced this action. The defendant moved for a nonsuit, on the ground thi t the action should have been brought by the executors of the testator, or by the executor of the .surviving executor; and that the plaintiff *vas barred by the statute of limitations.
Huger, J. who tried the cause, refused the motion on the grounds, that the length of time, and the fact that administration had been granted bj the ordinary, were sufficient to rebut the presumption that there was an executor to the surviving executor; and that the statutes could not commence to run until administration taken out.
The Jury found a verdict for the plaintiff, and the case was now brought up to this Court, and the point made.
1st. Whether the statute of limitations could commence running before administration.
*424 2nd. Whether the tenant for life of personal property was not entitled to the fee simple; or whether there could be such a thing as a remainder or reversion of per" sonal property after a gift for life in the same chattel ?
Curia per
C onceen, J.
The rights of these parties depend on. the construction of Harman Geiger’s will. An action was commenced by the surviving children of Geiger against the defendant, in which it was decided by this Court, that the testator had died intestate as to the reversionary interest in the negroes no win dispute,and that, therefore, an admini .tration must be taken out to enable them to recover from the defendant, who had refused to deliver them. This has been done, and on the trial below it was contended on behalf of the defendant that the plaintiff was barred by the statute of limitations — that old Mrs. Geiger, who afterwards married one Slappy, and to whom the negroes had been bequeathed for life, died on the 22d' June, 1822, and that administration was not granted until 17th August, 1827. — So that more than four years had elapsed after the death of the tenant for life, 6..fore action brought; and, further, that the plaintiff was not entitled to recover the full value of the negroes, because the wife of Slappy, who sold these negroes, was entitled to a portion of this reversionary interest, which of course belongs to the defendant. — So that if the statute began to run from the death of the tenant for life, the plaintiff is barred. If, from the time the administration was granted, then he is not barred.
While on the. one hand it is the duty of the Court to give full operation to the statute of limitations in those cases in which it clearly- applies, it is on the other equally their duty to prevent its application to cases not embraced within its letter or spirit. It has well been called £. statute of repose, and to give full effect to its sedative power, it has been determined that when it once *425 oegins to run, it shall continue its course, notwithstanding any supervening disabilities, and this has been the uniform course of decision in our Courts ; and it not un-frequently occurs that great injustice is done by giving this sweeping effect, as preventing the recovery of a debt which the Court sees clearly is still due; but we should never be unmindful that it is in derogation of the common law, and should not be strained in its operation, so as to embrace cases never intended to be effected by it. Its operation, by the terms of the act, commences from the cause of action, that is when the action accrues. If there' be no legal representative of an estate to enforce its claim to personal property, the action cannot be said to have accrued; or if there be a cause of action, to whose benefit could it accrue ? But still further: If the property be rightfully in the possession of a person who is answerable for it to the real owner, or interested in it, there can be no cause of action until one who is clothed with legal authority to demand and receive it shall make claim; for being rightfully in possession, there can be no conversion until there be a refusal to deliver it up, or a direct appropriation of it to the holders own and exclusive use or benefit. In this case, it is said 'to be a great hardship to suffer the property to be taken from the defendant after a possession of so many years; but the fact that it was given to a person for life who has lived to an extraordinary old age should not be lost sight of. The tenant for life died in 1822 — the property was immediately demanded and a suit commenced, but by those who had no legal authority to sue. As soon as that was decided, administration was immediately taken out and this action commenced Among a number of authorities relied on by the counsel for defendants, establishing positions which cannot be controverted, was one on which they greatly relied, contending that the language of the Court in it was peculiarly *426 applicable in this case — it is the case of Nicks and Martin* dale, in which the Court observe, that if the parties interested should neglect to take out administration, claims might be kept alive contrary to the policy of the act . But that was said in relation to cases not of the kind of that under consideration — cases where the statute had commenced its operation; for in cases like the present, one party is as much in fault as the other. The defendant, by applying for administration might have obtained it, or compelled those better entitled to interpose their claim. Í should, without the aid of authority ,have come to the conclusion that in this case the statute could not operate as a bar. But I am, nevertheless, happy to have (he support of the highest authority. The point was expressly settled in the case of the administrator of Kennedy vs. Edwards; and so in the ease of Curry and Stephenson, which in principle (as correctly reportedin Skinner) is directly in point. The case is thus stated; that A. receives the money of a person who afterwards dies intestate, and to whom B. takes out administration, and brings bis action against A, to which he pleads the statute of limitations, and tbe plaintiff replies and shews that administration was committed to him which was infra sex. anno:;, though six years are expired since the receipt of the money, yet not being so since tbe administration committed, the action is not barred by tbe statute ; but it is clear, that if tbe money had been received in the life time of the intestate he would have been entitled to his action, and the statute would have begun its course; therefore, it is apparent that the money was received after the death of the intestate, as reported by Skinner; and this is clear, because the case was decided on.tbe authority of Stanford’s case, cited in Jeffries’case, Cro. Jas. 60,61. And in Stanford’s case the fine was not levied until after tbe death of Ihe intestate. Motion refused.